R. H. BIERCE, AND K. POWELL *v.* THE RED BLUFF HOTEL COMPANY, JOHN BYERS, AND G. W. HOAG.

NOTICE TO AGENT IS NOTICE TO PRINCIPAL.—Notice to an agent of facts arising from or connected with the subject matter of the agency is constructive notice to the principal, where the notice comes to the agent while he is acting for the principal and in the course of the very transaction.

NOTICE TO ATTORNEY AT LAW IS NOTICE TO CLIENT.—It is the duty of an attorney at law to communicate to his client whatever information he acquires in relation to the subject matter of the suit, and he will be presumed to have performed his duty in that respect, and notice to him is constructive notice to his client.

WHEN NOTICE TO ATTORNEY IS NOTICE TO CLIENT.—The plaintiff sued to recover a debt, and garnisheed a supposed creditor of the defendant. After the service of the garnishment, plaintiff's attorney was informed that before its service the defendant had transferred the debt garnisheed to a third party. *Held,* that this notice to the attorney was constructive notice to the principal.

AMENDMENT OF FINDINGS.—*Query ?*—Can the Court, on the argument of a motion for new trial, amend its findings filed when judgment was rendered ?

APPEAL from the District Court, Second Judicial District, Tehama County.

The defendant, the Red Bluff Hotel Company, was a corporation.    On the 25th day of July, 1863, it was indebted to defendant, Byers, for work in building a hotel at Red Bluff, Tehama County, and upon a settlement, executed to Byers a written contract, by which the corporation agreed to pay him five thousand dollars in full for the indebtedness.    July 25th, 1863, Byers borrowed of Doll & Simpson one thousand dollars, and as collateral security for its payment at the end of three months, assigned to them the contract of the hotel company, and gave them a power of attorney to sell the contract if the money was not paid at the end of that time.    At the end of three months, the money not having been paid, Doll & Simpson sold the contract to defendant Hoag.    After the assignment to Doll & Simpson by Byers, plaintiffs, Bierce & Powell commenced a suit against Byers to recover some two thousand and eight hundred dollars which he owed them and garnisheed the Red Bluff Hotel Company.    Just before the garnishment, Elliott, as the attorney at law of plaintiffs, called on Doll & Simpson and asked them to let him see Byers' five thousand dollar obligation against the Red Bluff Hotel Company, as he had heard that Doll & Simpson were about to sell it, and wanted to see their authority to do so.    Doll & Simpson had then advertised the contract for sale.    They showed Elliott the contract, and their assignment of the same and power of attorney.    Soon after this, Bierce & Powell agreed with Byers to accept of the note of the Red Bluff Hotel Company for two thousand dollars, secured by mortgage, and settle the suit.    They then sent Elliott, their attorney, to the banking house of Doll & Simpson to have the papers executed, when Elliott was again informed that Doll & Simpson claimed to own the debt of the hotel company to Byers.    The note and mortgage were then given by the hotel company to Byers, and he assigned the same to plaintiffs.    The only consideration of this note and mortgage was the indebtedness of the company to Byers which he had previously assigned to Doll & Simpson.    Plaintiffs sought in this action to recover

judgment on the note and to foreclose the mortgage. They recovered judgment in the Court below, and defendants, the Red Bluff Hotel Company and Hoag, appealed.

The other facts are stated in the opinion of the Court.

*George Cadwalader*, for Appellant, argued that at the time of the execution of the note and mortgage sued on, the hotel company owed Byers nothing, because he had before then assigned to Doll & Simpson the contract and entire debt, and that when Bierce & Powell received an assignment of this note and mortgage from Byers, they had notice of the assignment, because notice to Elliott, their attorney, was notice to them; and in support of this proposition he cited *Stanley* v. *Green*, 12 Cal. 168; 2 Leading Cases in Eq. 106; *Sheldon* v. *Cox*, 2 Eden, 228; *Newstead* v. *Searles*, 1 Atk. 265; *Tunstall* v. *Frappes*, 3 Sim. 301; *Dryden* v. *Frost*, 3 M. & C. 670; *Lenehan* v. *McCall*, 2 Iredell's Equity, 342; *Proctor* v. *Cooper*, 31 Eng. Law & Eq. 216; and *In Reed's Appeal*, 34 Penn. 207.

*J. G. McCullough*, for Respondents, argued that although he did not controvert the elementary rule that notice to the agent was notice to the principal, yet the notice to the agent must be in the course of the particular transaction in which he was acting for the principal to affect the latter, and that an attorney at law had no authority as general agent, while a general agent included an attorney in fact and at law. He further argued that Elliott was simply an attorney at law for Bierce & Powell against Byers, and as such had no general authority to compromise the suit and take an assignment of the note and mortgage, and, therefore, notice to him before Byers made the assignment of the note and mortgage to Bierce & Powell, that the debt for which they were given had been transferred to Doll & Simpson, was not constructive notice to his clients.

By the Court, RHODES, J. :

It was a material issue in this case, whether the plaintiffs took the note and mortgage in suit, with notice that they were made on a settlement between Byers, the plaintiffs' assignor, and the Red Bluff Hotel Company, in respect to a certain contract theretofore entered into between them, and that such contract had been assigned, or pledged, by Byers to Doll & Simpson before such settlement, and was held by them when the settlement was made. The finding upon that issue was as follows : " It was stipulated, in open Court, by the attorneys of the Red Bluff Hotel Company and G. W. Hoag, that they would waive the defense that the note was not due ; and further, that the same was transferred to them (Bierce & Powell) without any knowledge or notice, on their part, of the transactions out of which the debt grew, or of the fact that Byers had pledged the five thousand dollar contract to Doll & Simpson. Plaintiffs are therefore *bona fide* holders for a valuable consideration." The defendants, in their motion for a new trial, assigned, as one of the grounds, that the evidence was insufficient to justify the finding, and under it specified that there was no evidence of such stipulation. The statement having been settled, the motion was called up for hearing, and denied ; and in the order denying the motion, the following statement and decision was made : " Upon hearing of the motion, the attention was called to an error in the findings drawn by the attorney, the findings as filed making it appear that there was a stipulation in Court between the parties, agreeing that the note in action was transferred by Byers to the plaintiffs without notice of any of the equities existing between Byers and the hotel company, or Hoag, or Doll & Simpson. The Court ruled that such finding was an error, when stated as a stipulation, but would be correct when stated as a finding of the Court from the evidence, and that this correction would be made in ruling upon the motion for a new trial, and is now so corrected, and to this ruling of the Court defendants then and there excepted."

The defendants make the point that the Court had no authority to amend the finding, and that the question as to granting a new trial must be passed upon as it would be had the amendment not been made. But it is unnecessary to express any opinion upon the question as to the power of the Court to make the amendment, for conceding it to have been erroneous, the statement shows that it was not productive of any injury to the defendants. In the statement the defendants specify not only that there was no evidence of the alleged stipulation, but also state as one of the specifications of the insufficiency of the evidence to justify the finding that: "The Court finds that plaintiffs are *bona fide* holders of said note for a valuable consideration without notice, whereas the evidence of L. W. Elliott and J. Combs (uncontradicted) fully shows that at the time of the transaction, out of which the note grew, and at the time the note and mortgage were executed, he was the authorized and acting attorney and counsel of the said plaintiffs, and took part in said transactions on behalf of plaintiffs, as such attorney and counsel." This we understand to be substantially a specification of the insufficiency of the evidence to justify the finding that the plaintiffs took the assignment without notice, and as no objection is made by the other side, we shall treat the matter as if such fact was actually or presumptively found. The statement, as prepared and settled, contains evidence applicable to this point alone, and the usual presumption will be indulged in that it contains all the evidence necessary to explain the point specified. This brings up for consideration the question whether the evidence was sufficient to support the finding, on the point of notice to the plaintiffs.

It appears that L. W. Elliott was the attorney for the present plaintiffs and brought suit for them against Byers, their assignor ; that process of garnishment was served on the hotel company ; that the suit was compromised, and in accordance therewith the note and mortgage in suit were transferred by Byers to the plaintiffs ; that the compromise was made on the part of the plaintiffs by one of them in person ; that their

attorney was subsequently informed of the compromise, and was sent by them to the bank of Doll & Simpson to receive the note and mortgage, which were executed while he was at the bank; that the attorney heard Doll & Simpson claim that they held the contract between the hotel company and Byers; that he saw the contract and knew that the note and mortgage were executed in part satisfaction of that contract, and that the plaintiffs had no *actual* notice of the assignment of the contract, until after they had received the assignment of the note and mortgage.

### *Notice to an agent, notice to his principal.*

The principle is elementary, that notice to an agent of facts arising from or connected with the subject matter of the agency, is constructive notice to the principal, where the notice comes to the agent while he is concerned for the principal and in the course of the very transaction; and many authorities hold that the rule extends to cases where the notice was imparted to the agent so near before the transacaction that he must be presumed to recollect it. (See *Le Neve* v. *Le Neve*, 1 Ves. 64; 2 Lead. Cas. in Eq. Pt. 1, p. 106; Story on Agency, Sec. 140; *Astor* v. *Wells*, 4 Wheat. 466; *Fuller* v. *Bennett*, 2 Hare, 402; *Sheldon* v. *Cox*, 2 Eden, 224; *Jackson* v. *Sharp*, 9 Johns. 162; *Reed's Appeal*, 34 Penn. 207; *Bracken* v. *Miller*, 4 Watt & Serg. 102; *Jackson* v. *Winslow*, 9 Cow. 13; *Jackson* v. *Leek*, 19 Wend. 339; Willard's Eq. 249; *Bank U. S.* v. *Davis*, 2 Hill, 461; *Mech. Bank* v. *Seton*, 1 Pet. 309.)

It is not doubted by the learned counsel for the plaintiffs, that if Elliott, their attorney, had effected the compromise of the suit with Byers, the plaintiffs would have become bound by the notice brought home to him, while acting as their attorney in that suit; but he contends that Elliott was simply their attorney at law, that his authority extended only to the management of the action, and that he did not, and did not claim to compromise the action. We need not pause to inquire whether he was not in fact their agent to some extent

in the matter of the compromise, he having been sent by them to the bank of Doll & Simpson to carry into effect the terms agreed upon between the parties to that action, by receiving the note and mortgage—which was there executed under his supervision—and by releasing the garnishment; for we are clear that the plaintiffs, before entering into the compromise, had constructive notice of the facts, which were brought to the knowledge of their attorney while prosecuting the action.    Before the compromise was agreed upon, Elliott saw the contract, which showed on its face that the five thousand dollars therein mentioned was to be paid by the hotel company to Byers, in full of his demands for the construction of the buildings, and was then informed by Doll & Simpson of their claim to the contract.    The plaintiffs were attempting to secure the payment of their demand against Byers, out of the money due him from the hotel company, and it was important to them to ascertain all the facts bearing upon the state and condition of the contract and account between the hotel company and Byers, or going to show any claim on the same prior in time or law to their own.    It was therefore the duty of their attorney to communicate to them whatever information he acquired on that subject, while acting in that capacity, and he will be presumed to have discharged his duty in that respect.    Indeed, the rule that notice to the agent is constructive notice to the principal, is based on the presumption that the agent has communicated to the principal the facts connected with the subject matter of his agency, which came to his notice.    These facts did not have a mere casual connection with the legal proceedings then on foot and in charge of their attorney, but they had a direct and important bearing upon the proceedings; and the agent having notice of them, his principals will be conclusively presumed to have had notice also.    Where others than the principal and agent are concerned, the presumption that the agent has discharged his duty to his principal in communicating facts of which he has notice, is as conclusive as the presumption that the principal remembers the facts brought home to him personally.

If counsel could maintain the position that the compromise was a transaction distinct from the action—of which some doubt may be entertained—the constructive notice imparted to the plaintiffs in the progress of the action before the compromise was entered into, attends them in all the transactions directly growing out of or connected with the action.

Judgment reversed and cause remanded for a new trial.